MATT FOSTER v. KANSAS CITY, CLAY COUNTY & ST. JOSEPH RAILWAY COMPANY, Appellant.—26 S. W. (2d) 770.

Division Two, April 7, 1930.

*Inghram D. Hook, James H. Hull* and *Paul C. Sprinkle* for appellant.

*W. W. McCanles* and *R. H. Worline* for respondent.

WHITE, J.—The appeal is from a judgment in the Circuit Court of Platte County March 19, 1927, for $10,000 in favor of plaintiff on account of personal injuries received while employed by the defendant in operating a power station.

The plaintiff operated Sub-Station D in North Kansas City, Clay County. The evidence is conflicting as to his experience with electricity. While he had been in the employ of the company since 1920 at different times and had had several years' experience, he testified that he was instructed two days in the performance of his duties at the sub-station; that he had no experience with electricity prior to the time he worked for the defendant, and could not "trace a lead." The jury was required to find and did find that the plaintiff at the time he was injured was not an experienced electrician, and "knew nothing about the details of the operation and mechanism of electrical machinery and appliances in the sub-station, except the knowledge of how to start and stop the machinery, read the meter, clean the oil switches, pull disconnects, kick out the oil switches, and charge the lightning arrester."

June 23, 1926, while in charge of Sub-Station D, plaintiff undertook to wipe the dust off the oil switches at that station, and received a charge, causing the injuries for which he sued. The electric current came into that station across the Missouri River from Kansas City on three wires, commonly known as a three-phase current. It came in at a comparatively low voltage, 6600 volts, and by means of transformers the voltage was "stepped up" to 33,000 volts and sent out on lines leading to Excelsior Springs and St. Joseph. The current, coming out of the transformers, traveled on the wires up to the ceiling of the room in which respondent was injured, and then passed through the wires on this ceiling down through oil switches, and out on the lines.

From photographs in the record and descriptions by the witnesses, it appears that three oil switches stood on the floor three or four feet high, and were connected with three oil switches eight or ten feet above the floor. Eighteen or twenty inches above those upper oil switches along the ceiling ran the power lines. Three "disconnects," attached to the oil switches, extended upward to the power lines. Those disconnects, eighteen or twenty inches in length, were pulled down on hinges, by which they are attached below, when necessary to shut off the current from those power lines.

On that day Sub-Station C was to be operated for the St. Joseph line, and Sub-Station D was to remain inactive. The plaintiff, first pursuing the method by which he was instructed, kicked off the oil switch below. The evidence is not clear as to how that was done. Then the plaintiff proceeded to pull down the disconnects on the three lines above mentioned. There was a hole in the top of each,

and, using a stick with a pin in the end, he pulled down each disconnect. He then placed a ladder against the lower oil switches, climbed up to about the fourth round of the ladder, three or four feet, where his shoulders were about on a level with the three oil switches and the three disconnects, which he had pulled down. The hot lines were still running along the ceiling above, probably almost on a level with the top of his head, eighteen or twenty inches above his shoulders. He was facing the middle oil switch and disconnect, and took hold of a brace iron with his right hand. He had in his left hand a rag, sprinkled with oil for the purpose of taking up the dust, and he reached over to the right with that rag in his left hand and started to wipe the oil switch near his right shoulder, when there was a sudden flash of light, and his left hand was severely burned and injured so that some of the bones were later taken out. Also his right hand was burned where it rested on the brace iron. The shock caused him to fall and his skull was fractured. There was no evidence of any electric burn about his head. It was only in his two hands where they appeared to form a connection of the current which passed through from the brace iron to the oil switch, which he was wiping, or from the oil switch to the brace iron. There was no evidence to show whether the electricity would cause greater damage where it passes into or out of a human body.

As the plaintiff was ascending the ladder, he wiped a rod extending from the base of the oil switch upward. It was made of wood and not electrified. The plaintiff, having proved the injury occurred in the way indicated, rested.

The defendant had previously filed a motion to make the petition more specific, because it did not particularize the negligence which caused the plaintiff to be injured. It only alleged generally that he was injured because the defendant negligently allowed and permitted a dangerous and deadly current to pass into his limbs and body. That motion was overruled. The case was submitted on the theory of *res ipsa loquitur.*

I. The defendant in its answer denied generally the allegations of the petition, and alleged that the plaintiff was experienced in the operation of the station, and his injury was caused solely by his own negligence; that he knew the wires, which passed through the station above, were highly charged with electricity; that in placing the ladder so that he could reach certain insulators, located twelve or fifteen inches from the wires highly charged with electricity, and while in the position of wiping and cleaning some portion of the electric apparatus, he negligently placed his hand in close proximity to or against the highly charged wires, or permitted the rag with which he was wiping it to come into proximity to or against the highly charged

wires, and as a direct result of that contact the electricity from the highly charged wires passed through his body. There was no direct evidence that plaintiff came in contact with wires above. The defendant merely asserts that plaintiff's injury could have occurred in no other way. That issue was submitted to the jury by an instruction presented by the defendant. They were instructed that if they found the facts as so alleged they should find for the defendant. The jury found for the plaintiff, and therefore did not believe that the plaintiff received his injury in the way described in the answer. That is, he did not receive his charge from carelessly getting his hand too close to the highly charged wires above where he was working. Thus that issue is eliminated from consideration.

II. The defendant did not attempt to explain how a current could get into the machinery where he worked after the disconnections were made as stated, but simply introduced evidence to prove that no current could get in there. The plaintiff had performed this operation previously and had never before incurred any injury. The only way in which the defendant attempted to account for the injury was in trying to show that the plaintiff carelessly effected a connection with the wires above. Defendant claims that its demurrer to the evidence should have been sustained, because two witnesses for the plaintiff testified that the machinery was rendered harmless, without any charge, after those disconnections were made. But the testimony of those witnesses merely means that ordinarily those disconnections would render the machinery harmless, and the purport of the entire evidence is that, if nothing unusual had occurred to charge that part of the machinery with electricity, it would have been dead and harmless.

The defendant introduced one electrical engineer, who was acquainted with the station and the arrangement there, and he testified that the disconnections made by the plaintiff would render the machinery harmless. He did not examine the place after the injury. One witness for the defendant examined it, a Mr. Watts, who was in charge of a sub-station, but what sub-station is not stated. He found a burnt rag, presumably the rag with which the plaintiff was wiping the machinery at the time the injury occurred. He made tests to show that the machinery was dead. He said: "I went up there with the ground wire and hooked a ground wire on each of all these phases that come down into the switch, and also the oil switch, and attached the wires that went from there on into the lines." It is not claimed that he was an electrical engineer.

One of plaintiff's witnesses also testified that he saw the burnt rag. No electrical engineer for the defendant made an examination of the premises after the injury. What might have taken place

after the injury and before any examination was made does not appear. The test, made by the witness Watts, who arrived forty minutes after the injury, does not show that he attempted to see whether there was any charge in the brace iron on which the plaintiff's hand rested. There was no attempt to explain whether or not there was somewhere on the line an operation which could cause a sudden charge to enter the station. The dispatcher, who had general charge of the operations that day, was not called as a witness for the defendant. There was no evidence of any inspection of the sub-station prior to the injury, nor evidence as to whether the high-powered wires had sagged, or some negligent connection had been permitted temporarily between them and the machinery in the sub-station. The jury was not obliged to believe witness Watts— the only witness who made tests.

The plaintiff put on several expert witnesses in attempting to show that circumstances might arise somewhere on the lines that would affect the station. All this evidence was objected to by the defendant, and some of it excluded. So, as the matter stands, the appellant rests squarely on the proposition that there could have been no charge in the machinery where plaintiff worked. Yet the plaintiff was injured by such a charge. The question then arises whether the doctrine of *res ipsa loquitur* applies. Having proved the injury in the manner stated, it was for the defendant to explain how the charge which injured the plaintiff came into the machinery in some way for which it was not to blame. It did not attempt to explain anything of the kind, but denied that such a charge should come in at all. It contented itself with the assertion that what actually happened could not happen.

The authorities support the doctrine that the rule of *res ipsa loquitur* applies between master and servant, where the master has entire charge of the apparatus or machinery with which the servant works. The plaintiff was charged with no duty to inspect, or to make tests. He was charged only with the duty of using care in wiping the oil switch as he did, and preventing any contact with the wire above, which care the jury found he exercised. He was under no duty to see whether there was a possibility of a charge getting into the station after he had made the disconnections according to instructions.

It is held in this state that electricity, being an unknown agent which often operates in an eccentric manner, requires the highest degree of care by those who use it in providing against injuries on account of it. [Warren v. Missouri & Kansas Tel. Co., 196 Mo. App. 1. c. 554-555; Hill v. Union E. L. & P. Co., 260 Mo. 1. c. 97; Gibbs v. Light & Power Co., 142 Mo. App. 24; Geismann v. Missouri-Edison Electric Co., 173 Mo. 1. c. 678; Von Trebra v. Gaslight Co., 209 Mo. 1. c. 659; Melcher v. Freehold

Inv. Co., 189 Mo. App. 177; 20 C. J. 280 et seq.; 39 C. J. 975 et seq.; 45 C. J. 1193 et seq.]

In the Warren case the rule is thus stated, quoting from a foreign decision: "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of proper care." On the same page, quoting from an Illinois case, it was said: "Its dangerous character is generally known, but the means by which its dangers are minimized are only known to those who have special knowledge and skill."

The defendant did not attempt to show by its experts and engineers how, without some negligence with the conditions in Sub-Station D, or some negligent operation of its machinery on the lines which connected with that station, an electrical charge could have got into the appliances with which plaintiff worked, but contented itself with denying that it could have got in there at all. Under those circumstances we hold that the doctrine of *res ipsa loquitur* applies, and that in the absence of any attempted explanation by the defendant, the inference was reasonable that the conditions which produced the plaintiff's injury were caused by some lack of extraordinary care with which the defendant was charged. In operating a street-car line with electricity at an extraordinarily high voltage, defendant was charged with the care of frequent inspection and constant testing of its apparatus to see that nothing was out of order which would cause a charge such as produced the injury here.

The judgment is affirmed. *Blair, P. J.*, concurs; *Walker, J.*, absent.