MATHEW BLAVATT and AGNES BLAVATT, Appellants, v. UNION ELECTRIC LIGHT & POWER COMPANY, a Corporation.—71 S. W. (2d) 736.

Division Two, May 17, 1934.

152

*Lemen, Field & Vogel* for appellants.

*Theodore Rassieur, George M. Rassieur* and *John P. McCammon, Jr.*, for respondent.

FITZSIMMONS, C.—Plaintiffs appeal from an order of the circuit court, city of St. Louis, sustaining defendant's demurrer to the evidence. Plaintiffs sued for $10,000 damages for the death of their son, Alfred Blavatt, then fifteen years of age, who died from injuries sustained by him on May 27, 1930, when he came in contact with certain high-tension wires.

The amended petition alleged in substance that the defendant owned and maintained a substation, located at 4209 Newstead Avenue in the city of St. Louis, containing a large number of wires carrying a high voltage of electricity and known as high-tension electric wires. The petition further alleged that immediately adjoining the substation was a lot, used by children generally as a place of recreation, including ball games, of which defendant knew or should have known, and further that the children in the course of their games were likely to come in close proximity to and in contact with defendant's high-tension wires, of all of which defendant knew, or by the exercise of ordinary care should have known, and charged that defendants negligently and carelessly failed to fence or otherwise guard these premises, and high-tension wires, and negligently and carelessly maintained the station and wires, without employing any attendant or

guard, and that as a direct result of defendant's negligence, plaintiff's son came in contact with the electric wires on May 27, 1930, and received burns from which he died. The amended answer admitted the ownership and maintenance of the station, including the high-tension wires, but denied the other allegations of the amended petition and pleaded contributory negligence.

The evidence on the part of plaintiffs tended to show that defendant's substation which fronted on Newstead Avenue was immediately north of and adjoined church property which was located on the northwest corner of Newstead and Penrose Avenues. When defendant's substation was first erected, the lot back of the substation building was used by children for ball games. Later defendant erected a transformer and placed high-tension wires on the lot in the rear of its building and built a brick wall around the lot. The wall was approximately seven to ten feet high, eighteen inches thick and had an entrance with two iron doors, in the alley in the rear of the property. These doors were fastened to the wall with iron hinges, each door having two or three hinges. Inside of and next to the wall and near the top of it was an iron cat walk which was intended for the use of defendant's employees whose duties might require them to work about the transformer and the wires. There were signs on the gates and on the wall, upon which the boy was killed, reading, "Danger! High Voltage. Keep Out!" Alfred Blavatt could read. He was in the eighth grade of a public school.

The only entry provided to the enclosure was through the gates at the rear and through the building at the front. Both the gates and the front entries were always kept locked. The presence of employees of defendant was not necessary to the operation of its substation, and its employees were never seen there except that, when a transformer blew, an emergency or trouble crew went there. So far as the record shows, defendant did not at any time receive either knowledge or notice that any boys had trespassed on its property.

The lot in the rear of the church and immediately south of defendant's premises was unfenced. For at least a year and a half before plaintiffs' son was injured, this lot was used by boys in the neighborhood for playing various games, including handball. In playing handball, the boys would use the brick wall as a backstop, hitting the ball against the wall. When the ball would go over the wall into defendant's property, the boys would go over the wall after it. They would get on the wall by climbing up the gate on the hinges and then walking along the top of the wall.

The testimony of actual trespasses committed showed (1) Joseph Kearney, number of times not shown; first time about two and one-half months prior to the accident. (2) Marlin Obermark, five times, period not shown; (3) James Kearney, the day of the accident, just

prior to the accident; (4) Charles Manion, five times in one and one-half years; (5) Jack Moenster, three or four times, period not shown.

Alfred Blavatt was injured on a Tuesday. On the previous Saturday, members of the church, whose property adjoined defendant's property on the south, built a wooden handball backstop on their own premises and close to the brick wall of the defendant. The members of the church made no objection to the use of this wooden backstop by the boys in the neighborhood, and these boys played on the following Sunday, Monday and on Tuesday until plaintiffs' son was injured. In playing handball, the ball is thrown against the backstop. When it comes back it bounces, and the object of the game is to hit it and so return it against the backstop on the first bounce. At the time that Alfred Blavatt was injured, five boys were on the lot. They had started playing about four o'clock and Blavatt was injured about three quarters of an hour later. As only four of the boys could play at a time, the fifth member of the group took a position on defendant's wall, to recover balls which went over the brick fence. Alfred Blavatt was on the wall for this purpose when the members of the group playing handball noticed a flash and heard a sound and discovered Alfred Blavatt lying on the wall near the backstop with his head towards the church property. His feet were on the cat walk inside defendant's property. He was removed by a district fire chief and taken to a hospital, where he died.

██ It is admitted that Alfred Blavatt was a trespasser on defendant's property when he received the shock and burns which caused his death. The law as to trespassers is as stated in Kelly v. Benas, 217 Mo. 1, 116 S. W. 557, l. c. 559, the rules being thus stated (116 S. W. l. c. 559):

"One applicable general rule of law is that there must be a duty raised by the law and breached by defendant before an action for negligence lies. Another is that the landowner or occupant owes no duty to trespassers or volunteers, going upon his land for their own purpose, to maintain it in any particular condition for their benefit. [Sweeney v. Old Colony Railroad (Mass.), 10 Allen, l. c. 372, 87 Am. Dec. 644; Staub v. Soderer, 53 Mo. 38.] Volunteers, bare licensees, and trespassers take the premises for better or for worse, as they find them, assuming the risk of injury from their condition, the owner being liable only for concealed spring guns, or other hidden traps intentionally put out to injure them, or any form of willful, illegal force used towards them. To invitees, however, he owes the active duty to exercise reasonable care for their safety."

██ Plaintiffs seek to make an exception to these rules by contending that defendant created and maintained on its premises artificial conditions likely to cause death or serious injuries to trespassers and which it had reason to believe such trespassers would not discover, and

that defendant knew, or should have known that children using the adjoining lot as a playground were constantly trespassing upon defendant's wall and premises, and therefore that defendant is liable for the injuries caused by the artificial condition thus created and maintained.

Plaintiff, for support of this exception to the rule as to trespassers, leans heavily upon Sections 205 and 209, of the Restatement of the Law of Torts, Tentative Draft No. 4. Section 205 is as follows:

"Section 205. Liability for Artificial Conditions Highly Dangerous to Constant Trespassers upon a Limited Area.

"A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm caused to them by an artificial condition thereon, if

"(a) (1) The condition is one which the possessor has created or maintains and (2) is, to his knowledge, likely to cause death or serious bodily injury to such trespassers and

"(3) is of such nature that he has reasons to believe that such trespassers will not discover it, and

"(b) The possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved therein."

A comment which the Restatement of the Law of Torts makes on the foregoing section takes from the section some of the force which plaintiffs ascribe to it. The comment also clarifies the section. The comment is as follows:

"d. The duty which the principle stated in this Section imposes upon a possessor of land is not an absolute duty to warn the trespasser of even highly dangerous conditions. It is a duty merely to use reasonable care to give a reasonably adequate warning. In determining whether reasonable care has been used the burden of giving a warning adequate to prevent the particular injury which the trespasser sustains is to be compared with the risk to him involved in the absence of warning. This includes the chance that, unless warned, he will come in contact with it and the gravity of the injury which he will sustain if he does so.

"e. A possessor of land is not subject to liability under the principles stated in this Section unless he has failed to use reasonable care to warn the trespassers of the condition created or maintained by him thereon and of the risk involved therein. The possessor is entitled to assume that trespassers will realize that no preparation has been made for their reception and will, therefore, be on the alert to observe the conditions which exist upon the land. In addition, he is also entitled to assume that they will be particularly careful to discover dangerous conditions which are inherent in the use to which the possessor puts the land. On the other hand, he is not entitled to

assume that the trespassers will discover conditions which are unusual to land of the character upon which the trespasser intrudes or which are due to carelessness in the maintenance of those conditions which are necessary to the use of the land, if the conditions are not readily observable by the attention which the trespasser should pay to his surroundings.''

We neither adopt nor reject—because unnecessary—the statement of principles quoted from the tentative draft of the Restatement of the Law of Torts. It is enough to say that they do not make out a case of negligence upon the record before us. Plaintiffs have not shown us any other authorities and we have not found any that warrant us in holding that the trial court erred. The Missouri cases cited by plaintiffs are not actions by trespassers upon the land of the defendants sued.

Plaintiffs cite Clark v. Longview Public Service Co., 143 Wash. 319, 255 Pac. 380. But the facts in that case differ in essential particulars from the facts here. There the transformer was part of a pumping plant which was located near a canal to which large numbers of people habitually went to fish. The dangerous electrical equipment was surrounded by a woven wire fence enclosing a space twenty feet wide and forty feet long. There were no posts except corner posts on the north and south side, and the twenty feet of wire span on these two sides were not very taut. Under the north side of the fence there was a hole, estimated to be from two and one-half feet to four feet in depth. Through this hole the plaintiff, a girl eighteen years old, passed into the enclosure and looked through a window of the pumphouse in which the machinery was operating. There were no warning notices on the north or south sides of the enclosure. In the instant case there were warning signs on the brick wall which was the handball court. There was no hole through which the boys might crawl. The wall was too bare and too high for active boys, of advanced school age, to scale. There was also a warning sign on the alley gate which was of iron, locked and high. Of this sign on the alley gate, Joseph Kearney, one of Alfred Blavatt's playmates, and a witness for plaintiffs, said:

''There was a big sign on the double metal gate in the alley, where it would be right in front of my eyes when I looked toward the gate.'' And the words on that sign were: ''Danger! High Voltage, Keep Out!'' The necessary projections of the hinges on the alley gate gave the boys their only toe hold. They could not reach the top of the gate when they stood on the alley level.

In the Clark case the court stated (255 Pac. l. c. 381):

''There was sufficient evidence to show that the appellant must have known that young and old people were in the habit of congregating in great numbers near this pumphouse, and the jury were

justified in believing that the appellant should have reasonably anticipated that young people especially might enter this inclosure through these holes, and that the appellant was guilty of negligence in failing to make the inclosure more secure, or in not placing a sufficient number of warnings to apprise the public of the danger lurking in the situation.''

We have seen that, in the instant case, warning signs were on the side wall and on the back gate and that there were no holes under the wall. There is a complete lack of evidence here to show that defendant knew or should have known that the boys were in the habit of entering the enclosure to retrieve the handball when it went over the wall. It was a self-functioning plant which did not require an attendant to operate it as in Smith v. Southwest Missouri Railroad Co., 333 Mo. 314, 62 S. W. (2d) 761, and in Foster v. Kansas City, Clay County and St. Joseph Ry. Co., 325 Mo. 18, 26 S. W. (2d) 770. In railroad cases where persons are injured or killed while walking along paths beaten and worn by the feet of many trespassers, who are always visible to passing engine men and trainmen, the rule is different and rightly so. [Eppstein v. Missouri Pacific Ry. Co., 197 Mo. 720, 94 S. W. 967.] In the instant case the trial court declared its intention to sustain an objection to evidence unless plaintiffs could show knowledge of the defendant that the boys were in the habit of entering the enclosure and counsel for plaintiffs responded: ''I don't know that I can show that.'' And no such showing was made.

It is obvious that there is not here facts to invoke the principles of ''attractive nuisance'' cases. And this court has held in cases of electrocution by power wires that the principle of attractive nuisances does not go beyond the turntable cases in Missouri. [Howard v. St. Joseph Transmission Co., 316 Mo. 317, 289 S. W. 598.]

The negligence charged is that defendant failed to fence and otherwise guard the premises and failed to employ an attendant or guard. In our opinion the high brick wall was a sufficient barrier against trespassers, if not to exclude them, at least to fulfill defendant's duty toward them. The notices on the wall and gate were a sufficient warning. We know of no authority that would impose upon defendant the duty of employing a watchman to attempt what the wall and warnings might fail to do in the way of excluding trespassers. The judgment of the circuit court accordingly is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. *Ellison, P. J.,* absent; *Tipton,* Acting *P. J.,* and *Leedy, J.,* concur.