The STATE of Missouri ex rel. Alice Bopp BURGESS and Ella Bopp Burgess d/b/a Pine Crest Home for the Aged, Relators, Appellants,

v.

G. Joseph NEAF and the United States Fidelity and Guaranty Company, Respondents.

No. 32905.

St. Louis Court of Appeals.

Missouri.

March 18, 1969.

Love & Mann, Joe Bill Carter, Clayton, for appellants.

Wiley, Craig, Armbruster & Wilburn, Richard D. Mills, St. Louis, for respondents.

PER CURIAM.

This case has been recently reassigned. We will refer to the parties by their designation in the trial court. Plaintiffs rendered nursing home care to four incompetents for each of whom the individual defendant Neaf was the guardian of the person and the estate. The corporate defendant was Neaf's surety for the faithful performance of his duties while he served as public administrator. After jury verdict in their favor as to Neaf's activities with regard to the estates of three of the four incompetents, the trial court entered judgment for plaintiffs. The jury's verdict assessed no damages as to the fourth incompetent and Neaf's actions with regard to his estate need not be considered on this appeal. Upon timely after-trial motion, the trial court sustained defendants' motion for new trial without specifying the grounds for its action.

Plaintiffs have proceeded in this appeal subject to Civil Rule 83.06(b), V.A.M.R.

The three incompetents involved in the appeal are Charles Winand, Lily Love a/k/a Lily Wilson, and Wilhelmina Potthaust. With respect to all three the allegation was Neaf negligently failed to petition or to timely petition the State Department of Health and Welfare and the St. Louis County Council for aid to them. With respect to Wilhelmina Potthaust, it was also alleged Neaf negligently failed to conserve an asset of her estate in that he allowed real estate she owned and which was appraised at $7,000.00 to be sold at foreclosure for the amount of the deed of trust against it; i. e., $1,030.00. With respect to Charles Winand, the petition also alleged Neaf negligently failed to prorate the assets of his estate among the creditors thereof. However, plaintiffs abandon the separate allegations as to Potthaust and Winand by the form of their measure of damage instruction limiting their recovery to the amount the estates of these incompetents would have received had Neaf timely petitioned the State and County authorities for aid to be granted to them.

Stated in the light required of us by the verdict in the trial court, the evidence pertinent to the issues of this appeal, together with that necessary to general understanding of plaintiffs' and defendants' theories of the case, shows that eligibility for old age assistance or aid to the totally and permanently disabled provided under the statutes of this state is based on the so-called "means" test. The applicant is qualified for such assistance provided he or she has insufficient means for subsistence. A person is not entitled to both benefits at the same time. During the time involved in this action a person owning property having a value in excess of $5,000.00 was ineligible for public assistance under any circumstances. Under the regulations of the Division of Welfare of this state real estate in which the owner has not lived for two years, and which has a value of $750.00

or more if the applicant is a single person or $1,500.00 if it is a married person living with spouse, is considered a resource rendering a claimant ineligible for public assistance. Payments of old age assistance begin at the time of approval of the application therefor and may be made directly to the nursing home in which the person is receiving care. At the time pertinent to this appeal the amount of the payment made under such program was $70.00 per month.

There were also available certain funds from the treasury of St. Louis County. The first of these will be referred to as "the County supplement". Payments of this nature are authorized under ordinances of St. Louis County upon the authority and at the discretion of the Director of Welfare of that County. The testimony was that these sums were paid only on behalf of recipients of state welfare aid and were for the amount of difference between that received from state welfare and the cost of the nursing home care.

It also appeared from the evidence that under the provisions of § 475.370, RSMo 1959, V.A.M.S., a guardian who had received an order of no further process from the probate court could petition the St. Louis County Council for payment from the treasury of said county to the nursing home for the care and maintenance of his ward. Action on such a petition is discretionary with the St. Louis County Council. During the testimony, applications of this nature are referred to as "statutory relief".

Lily Love a/k/a Lily Wilson became Neaf's ward in April of 1961. She was then receiving $65.00 monthly pension as a blind person and this sum was thereafter turned over to plaintiffs who were charging $150.00 monthly for her care. Neaf did not apply for county supplement payments to be made to Lily Love until October of 1962. His explanation was that the delay was necessary to determine whether she owned a certain piece of real estate. Plaintiffs' contention is that the property in question was admittedly only worth

$400.00 at the time Neaf became Lily Love's guardian, that she had only $94.00 of other assets in her estate, that even if she had owned the property her assets would have been soon exhausted, and that Neaf was negligent in not applying for county supplement payments to be made to Lily Love within, to quote from plaintiffs' brief, " * * * a couple or three (3) months of his appointment." They raise essentially the same claim as to Neaf's negligence in failing to apply for statutory benefits under § 475.370, supra. In January of 1963 county supplement checks of $85.00 a month began arriving for Lily Love. At that time the difference between the $65.00 a month blind pension and the $150.00 charge for her care had accumulated to the sum of $1,585.00.

The ward Winand owned certain real estate appraised at $3,500.00 including a "burned down house" in which he was not living. Neaf believed ownership of this real estate made the ward ineligible for public assistance. In August of 1962 Neaf petitioned the probate court for permission to sell this real estate, and the petition for approval of that sale was filed in November of 1962 showing the sale price as $2,625.00 which was less than the indebtedness shown as existing against the estate in the previous annual settlement. The report of the sale was approved on January 2, 1963, and on January 8 Neaf applied to the State Department of Welfare for old age assistance to be granted to Winand. The evidence was that two or three months later the Welfare Department informed him of the rejection of Winand's application. Within three days thereafter Neaf filed an appeal and when that was delayed he obtained permission from the St. Louis County Circuit Court to file a mandamus action as a poor person on behalf of his ward Winand, seeking to compel the Director of Welfare to consider the appeal. Upon suit being filed the authorities agreed the appeal would be handled, and the suit was dismissed. So far as it appears from this record, the only result of the appeal was that Winand's

application was referred back to the district office of the State Department of Welfare for "appropriate action". Neaf believed the claim for welfare benefits was an asset of the estate and for this reason did not make an application for an order of no further process so that statutory benefits could be applied for.

Wilhelmina Potthaust owned a parcel of real estate appraised at $7,000.00. Neaf was not able to get any firm offer for the property but did receive oral offers in the amount of $3,500.00 and $4,000.00, the latter being conditioned upon the proposed purchaser's securing proper financing. His testimony was that the property could not be sold unless the sale price was at least three-fourths of the appraised value. Nothing ever came of either one of these oral offers and the property was thereafter sold under foreclosure for the sum due on the deed of trust against it. Plaintiffs' theory in regard to Wilhelmina Potthaust is that Neaf waited seven months after the foreclosure and sale of this property before he petitioned the probate court to charge off the real estate as worthless and before petitioning the probate court for an order of no further process, with the result that plaintiffs did not begin receiving their full monthly charge of $150.00 for caring for Wilhelmina Potthaust until September of 1963. Old age assistance payments of $70.00 per month and county supplement payments of $40.00 per month were made for the month of March, 1963, and subsequent months. By reason of this, plaintiffs alleged a loss of $545.00.

Defendants filed a motion for directed verdict at the close of plaintiffs' case on the grounds plaintiffs had failed to make a submissible case. That motion was overruled. Defendants went on to offer evidence and did not file any motion for directed verdict at the close of all the evidence.

The case was submitted to the jury on plaintiffs' verdict directing Instruction No. 3 which informed the jury their verdict must be for plaintiffs if they believed: "First, the defendant G. Joseph Neaf, as

Public Administrator, was negligent in any or all of the acts complained of in said defendant's administration of the estate of Wilhelmina Potthaust; * * * said negligent act or acts resulted in the relators receiving less from the estate of Wilhelmina Potthaust than they would otherwise have received; * * *." The same hypothesis was submitted for Charles Winand and Lily Love. At plaintiffs' request the jury was also instructed as follows: "INSTRUCTION NO. 5 You are instructed that a guardian failing to timely apply for statutory allowances for his ward and thereby losing the right to such·allowances would be negligent. * * * INSTRUCTION NO. 6 If the estate of an incompetent person is insufficient to pay his debts in St. Louis County, his guardian may apply to the County Council for an appropriation from the County Treasury for the support of his ward, provided said guardian has duly accounted and settled with the Probate Court, for the money and effects which have come into his hands for the support of his ward."

■ Defendants' brief contains five allegations of prejudicial error. The first four are restatements of their basic contention plaintiffs failed to make a submissible case. These allegations of error are not properly before us and will not be ruled in this appeal. Several of them are based upon the trial court's ruling upon defendants' motion for a directed verdict offered at the close of plaintiffs' case. Having proceeded to offer evidence after that motion was overruled, defendants waived their right to complain of the trial court's action in that regard. Woods v. Dalton, Mo.App., 331 S.W.2d 132; Fairley v. St. Louis Public Service Co., Mo.App., 389 S.W.2d 378; Civil Rule 72.02, V.A. M.R.; and see cases collected at 27 Mo. Digest, Trial, ☜420, p. 1073. Other allegations of error attempt to raise the issue of submissibility. By failing to renew their motion for directed verdict at the close of all the evidence and by offering instructions, the defendants are held to have in effect acquiesced in submission of

the case to the jury and may not now raise that question. Sides v. Mannino, Mo.App., 347 S.W.2d 391, 1. c. [2, 3] 394 and cases there cited; Meier & Pohlmann Furniture Co. v. Troeger, Eighth Circuit, 195 F.2d 193; Civil Rule 72.02, supra. Under this state of the record we do not reach the novel and intriguing question of how plaintiffs could make a submissible case based upon their theory Neaf negligently delayed in applying for benefits, the award of which was admittedly discretionary regardless of when the application was made. Neither do we reach the equally intriguing question of whether plaintiffs, who have brought this action against the defendant Neaf individually and not in his representative capacity, can make a submissible case against the corporate defendant in view of the holding that such bonds generally are for the benefit of the wards only. Those interested in that question may seek some light by reference to 44 C.J.S. Insane Persons § 53 (1), p. 144, and cases there cited.

■ Defendants' allegations of prejudicial error with regard to plaintiffs' instructions are properly before this court. It is unnecessary to review all of the instructions about which defendants complain. Neither is it necessary to list all the errors to be found in such instructions. Instructions 5 and 6 are examples of those instructions offered by plaintiffs and given by the court which are mere abstract statements of law. Other such instructions were given. In addition, and with respect to Instruction No. 5, the evidence is there was no "right" to such allowances as are referred to in that instruction. In any event, abstract statements of the law requiring no finding by the jury tend to mislead and confuse the jurors and are as objectionable since the adoption of MAI as they were prior to that time. Chism v. Cowan, Mo., 425 S.W.2d 942, 1. c. [11] 949. Indeed, having the purposes of MAI in mind, it would seem they are even more objectionable now.

■ Certainly Instruction No. 3 granted the jury a roving commission by allowing

them to find Neaf negligent " * * * in any or all of the acts complained of * *" without any specification of such act or acts. Again we note that MAI has not lessened the objectionable aspects of such instructions. Hartford Accident and Indemnity Company v. List, Mo.App., 424 S.W.2d 761. It should also be noted that the second part of Instruction No. 3 allowed the jury to find Neaf's negligent act or acts resulted in plaintiffs receiving less from the estate of each of these incompetents than they would had he otherwise acted. The undisputed evidence is that the award of funds for which plaintiffs contend Neaf should have made application at an earlier date was purely discretionary. This part of Instruction No. 3 was therefore not only submitted without evidentiary foundation but to allow the jury to find the issue submitted in that fashion in favor of plaintiffs would be to allow them to indulge in the wildest sort of speculation.

The trial court correctly granted defendants a new trial.

The cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

All concur.