Danny Ray MOBLEY and Phyllis Mobley, Plaintiffs–Respondents,

v.

WEBSTER ELECTRIC COOPERATIVE, Defendant–Appellant.

No. 18212.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 4, 1993.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 26, 1993.

Application to Transfer Denied Sept. 28, 1993.

---

Dale L. Beckerman, Mimi E. Doherty, Deacy and Deacy, Kansas City, for defendant-appellant.

B.H. Clampett, Richard Paul Wacker, Craig A. Smith, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for plaintiffs-respondents.

MONTGOMERY, Presiding Judge.

Danny Ray Mobley (Plaintiff) brought this negligence action against Webster Electric Cooperative (Webster) to recover damages for injuries he received while attempting to install a transformer fuse. A favorable jury verdict to Plaintiff resulted in assessment of his damages at $200,000. The jury assessed Webster's fault at 75 percent, Plaintiff's fault at 25 percent, and a judgment was entered for Plaintiff in the amount of $150,000. On Plaintiff's wife's claim for loss of consortium, the jury found for Webster. Only Webster appeals.

The issues on appeal are Webster's respective claims to a directed verdict and lack of submissibility, instructional error, and numerous trial errors. We first consider the evidence relating to Webster's liability.

In determining whether a plaintiff has made a submissible case, we must view the evidence in the light most favorable to the plaintiff, giving him the benefit of all reasonable inferences to be drawn from the evidence and disregarding the defendant's evidence except as it tends to support the verdict. *Forinash v. Daugherty,* 697 S.W.2d 294, 296 (Mo.App.1985).

So viewed, the evidence shows that Webster is a rural electric cooperative with headquarters in Marshfield, Missouri. On December 25, 1987, a severe ice storm hit Southwest Missouri, including the Marshfield area. All of Webster's customers, including Plaintiff, lost their electrical power as a result of the storm, and most were without power for several days thereafter. Plaintiff and his family lived on a farm in a rural area south of Marshfield.

On December 30, 1987, Plaintiff attempted to install a transformer fuse located on Webster's electrical transformer situated on Webster's utility pole in Plaintiff's front yard. The transformer was attached to the pole about 18 feet from the ground. When Plaintiff attempted to install the fuse, he received severe burns and other injuries.

The other relevant events of December 30, 1987, began when Plaintiff's electricity came back on about 7:00 a.m. Twenty minutes later the power went off again. Plaintiff learned his neighbors on each side of his home had electrical power. Plaintiff called Webster about 8:00 a.m. and advised them of his current situation. He was asked if his lines were down or if anything else was obviously wrong, and he said he would check. In checking, Plaintiff determined all his lines were up, but he noticed the transformer on the pole in his front yard had "a piece ... up there kind of dangling in the air." He looked on the ground and found a ring with a braided piece of wire on it and then called Webster to advise them what he found. His call was referred to a field supervisor who described the article Plaintiff found as a fuse. The supervisor indicated a Webster truck was in the area and that he would have it "run by" Plaintiff's home and "slap one in."

By 10:00 a.m. the truck had not arrived. Undaunted, Plaintiff drove his pickup truck up to the pole in the front yard and placed his 12–foot aluminum ladder on top of the cab of the truck. By doing so, the top of the ladder reached 18 feet above the ground when placed against the pole and transformer. Plaintiff was careful to position the ladder so it would not fall into any lines coming to the pole from the opposite side of the ladder. He climbed the ladder

and removed the dangling piece of fuse from the transformer. Armed with both pieces of the fuse Plaintiff called Webster a third time. During this call he asked the receptionist if he could use a jumper wire in place of the fuse. She stated she would ask. She returned to the phone and said, "Absolutely not.... A jumper wire will get you killed." Plaintiff asked, "It has to be a fuse?" She replied, "Yes, it has to be a fuse."

Around noon that day a neighbor stopped by and advised Plaintiff there was a utility truck down the road. That information prompted Plaintiff's fourth call to Webster. He asked if the truck would contain a fuse that he could get. The woman responded that she did not know, but probably so.

Plaintiff drove his car looking for the utility truck. Upon failing to find it, he proceeded to Marshfield. He first went to Sho–Me Power Company warehouse but no one was there. He then went to Sho–Me's office and was informed the pieces he had were an "old kind" of fuse and that Webster would probably have one like it.

Without faltering, Plaintiff proceeded to Webster's warehouse. There, he encountered a young man near the front door and asked him for a fuse like the one he had. The young man stated, "[W]e'll fix you up" or "I can help you," or words to that effect. The young man took Plaintiff in the warehouse to an area with numerous bins storing fuses. Both started looking for the identical fuse, and Plaintiff found one with the same number as the one he had. He asked the young man, "Is this the right one?" And he replied, "Yep, that's it." Plaintiff was not charged for the fuse. Plaintiff described this young man as being in his early 20s and of medium height. He was wearing a ball cap and had brown hair. Plaintiff was not acquainted with him.

Returning home, Plaintiff proceeded to install the fuse. The ladder and truck had not been moved from the pole since Plaintiff used it that morning. One rail of the ladder remained against the pole and the other rail against the transformer. Plaintiff climbed the ladder wearing gloves and

was equipped with a pair of insulated pliers. He locked the fuse in the top prong of the transformer and decided to change his grip to lock the fuse in the "bottom part." He started to move his arm and then felt a jolt which caused him to fall to the ground. Suffice to say, his injuries were serious.

## SUBMISSIBILITY

Webster's point I claims the trial court erred in overruling its motion for directed verdict at the close of all the evidence for the reason Plaintiff failed to make a submissible case that (a) Webster negligently furnished Plaintiff the fuse or (b) Webster had a duty to warn Plaintiff or (c) any employee of Webster gave Plaintiff the fuse and (d) the evidence showed Plaintiff was a trespasser and there was no evidence that Webster inflicted any intentional harm on him.

Plaintiff's theory, as submitted in his verdict director, was Webster either negligently furnished Plaintiff the fuse or negligently failed to warn of the risk from being on the transformer. This disjunctive submission allowed the jury to hold Webster liable on either theory. Webster claims no submissible case was made on either theory.

An electric company is not an insurer of the safety of persons and its liability is determinable upon principles of negligence. *Donovan v. Union Elec. Co.*, 454 S.W.2d 623, 626 (Mo.App.1970). However, a generator and transmitter of electricity is required to use the highest degree of care to prevent injury which it could anticipate, even though it did not anticipate the exact injury which occurred or the exact manner in which the injury occurred. *Mrad v. Missouri Edison Co.*, 649 S.W.2d 936, 940 (Mo. App.1983); *Lebow v. Missouri Public Serv. Co.*, 270 S.W.2d 713, 715 (Mo.1954).

In order to make a submissible case of negligence, plaintiff must show facts establishing the existence of a duty on the part of defendant to protect plaintiff from injury, failure of the defendant to perform that duty and that plaintiff's injury was proximately caused by such failure. *McKim v.*

*Sears Rodeo Ass'n, Inc.*, 789 S.W.2d 217, 220 (Mo.App.1990).

■ A duty is a requirement to conform to a standard of conduct for the protection of others against unreasonable risks. *Hoover's Dairy, Inc. v. Mid–America Dairymen*, 700 S.W.2d 426, 431 (Mo. banc 1985). The paramount factor in determining the existence of a duty is the foreseeability that some injury might result from the tortfeasor's acts or omissions. *Id.* Thus, anticipation or foreseeability of injury because of defendant's acts or omissions is an essential element in determining liability. *Donovan*, 454 S.W.2d at 626.

■ In actions against a supplier of electricity, a submissible case on the issue of foreseeability is made if the jury could fairly find that, in the exercise of the highest degree of care, defendant reasonably could have anticipated that some injury was likely to occur to one lawfully near its transmission line. *Foote v. Scott–New Madrid–Mississippi Elec. Co-op.*, 359 S.W.2d 40, 44 (Mo.App.1962). Even though the highest degree of care is demanded of an electric utility company, it is only bound to guard against those occurrences which can reasonably be anticipated by the utmost foresight. *Hamilton v. Laclede Elec. Co-op.*, 294 S.W.2d 11, 14 (Mo.1956).

While the existence of duty is a question of law to be decided by the court, *Redeker v. Bradbury*, 708 S.W.2d 813, 815 (Mo.App. 1986), the courts have usually held the question of foreseeability is one for the jury. *Mrad*, 649 S.W.2d at 941.

■ After carefully reviewing the evidence, we partially agree with the trial court and hold Plaintiff made a submissible case on his theory that Webster negligently furnished him a fuse. As we understand Webster's argument, causation and injury are not in dispute.

*Furnishing the fuse.* We believe that under the evidence set forth Webster had a duty not to give Plaintiff a fuse without warning him of the dangers involved in its installation. Such a duty arose from the requirement that Webster must conform to a standard of conduct that protects Plaintiff from unreasonable risks. The risk inherent in providing Plaintiff a fuse without any warning is graphically illustrated by the deposition testimony of Vernon Graves, Webster's warehouseman. He stated he would not give his manager a fuse because "he don't know how to handle it," and he would not give a customer a fuse because it would "kill him." Implicit in his testimony is the premise that a customer who is given a transformer fuse will likely install it.

Foreseeability of some injury to Plaintiff after being given a fuse is the paramount factor in determining the existence of a duty. The jury had evidence that Plaintiff endured without electricity for five days, his neighbors had electricity, and he needed only a fuse to correct his problem. He was told a Webster utility truck might have the fuse he could get. After finding no truck, Plaintiff was given a fuse at Webster's warehouse. Through the four telephone conversations with Plaintiff, Webster knew Plaintiff's lack of electricity was likely due to a blown transformer fuse and Plaintiff was attempting to obtain a replacement fuse on his own. He was only warned against using a jumper wire. Later the same day Plaintiff was given a fuse without any further warning. On these facts we believe a jury could fairly find that, in the exercise of the highest degree of care, Webster could have anticipated that Plaintiff would likely be injured by attempting to install the fuse near Webster's electric lines.

■ *Warning.* Plaintiff disjunctively submitted that Webster negligently failed to warn him of the risk of harm from being on the transformer. When an instruction submits theories of liability in the disjunctive, each must be supported by substantial evidence. *Weast v. Festus Flying Serv., Inc.*, 680 S.W.2d 262, 267 (Mo.App.1984). The lack of such support on any one theory renders the submission erroneous. *Saupe v. Kertz*, 523 S.W.2d 826, 830 (Mo. banc 1975).

Even viewed in the light most favorable to Plaintiff, we find no evidentiary support

for this submission. Clearly, the only circumstance which caused Plaintiff to climb on the transformer was the fuse installation. He was told his problem was a fuse, and he was attempting to only solve that problem. There was no evidence from which the jury could conclude Plaintiff was entitled to a warning except in connection with the fuse installation. We have said Plaintiff made a submissible case on that theory. We find no evidence in the record giving rise to a duty on Webster to warn Plaintiff about being on the transformer independent from furnishing him a fuse.[1] In essence, Plaintiff attempted to create two theories of liability out of one. Because Webster's duty to warn arose only from furnishing Plaintiff a fuse, Plaintiff's evidence did not support a submission on failure to warn. The case must be reversed and remanded.

*Scope and course of employment.* The argument following this subpoint merely recites Webster's view of the evidence that the young man in his 20s who gave Plaintiff the fuse was not Webster's employee. Because there is no authority cited or rationale to support this contention we deem the point abandoned. *In re Marriage of Kempf,* 825 S.W.2d 667, 668 (Mo.App.1992).

■ *Plaintiff's status.* Webster contends Plaintiff was a trespasser on its pole and transformer when he was injured and as such, Webster owed him only a duty to avoid intentional harm. The duty owed entrants upon the possessor's premises is controlled by the status of the person entering the premises. *Singleton v. Charlebois Const. Co.,* 690 S.W.2d 845, 847 (Mo. App.1985).

As stated in *Taylor v. Union Elec. Co.,* 826 S.W.2d 57 (Mo.App.1992):

A trespasser, one who enters without permission of the possessor, is owed no duty with regard to the condition of the land. A licensee, one who enters with the permission of the possessor for the licensee's own purpose, is owed a duty of reasonable care with regard to known hazards. An invitee, one who enters with the permission of the possessor for the benefit of the possessor, is owed a duty of reasonable care for hazards known or those that should be known, to the possessor.

An invitation to enter land is defined as "conduct which justifies others in believing that the possessor desires them to enter.... Any words or *conduct* of the possessor which lead or *encourage* the *visitor to believe* that his entry is desired *may be sufficient for the invitation.*" Thus, what constitutes an invitation is not necessarily what the possessor of the land intended, but rather what a reasonable person would interpret the conduct to mean.

*Id.* at 59 (citations omitted).

Webster urges that this case is factually similar to *Blavatt v. Union Elec. Light & Power Co.,* 335 Mo. 151, 71 S.W.2d 736 (1934). There, plaintiff's 15–year–old son was killed when he came in contact with defendant's high tension wires. The boy climbed a brick wall surrounding defendant's substation to retrieve a handball. Signs on the wall and gates warned "Danger! High Voltage. Keep Out!" The parties admitted the young boy was a trespasser. *Blavatt* does not aid Webster because of the obvious factual differences.

Here, there was evidence allowing the jury to fairly find that Webster's conduct was an invitation for Plaintiff to install the fuse given to him. The installation necessarily required Plaintiff to climb on Webster's pole and transformer. Webster would receive a benefit once its customer's electricity was restored. A submissible case was made on this issue.

## VERDICT DIRECTOR

■ Over Webster's objection, the trial court gave Instruction No. 7, as the verdict directing instruction. That instruction reads:

coming in contact with electrical equipment. Our holding is confined to the unique facts of this case.

---

1. Certainly, we can envision other factual settings where a supplier of electricity would have a duty to warn the public of dangers from

In your verdict you must assess a percentage of fault to defendant Webster Electric Cooperative, whether or not Plaintiff Danny Ray Mobley was partly at fault, if you believe:

First, either:

the person in the warehouse was acting within the scope and course of his employment by Webster Electric Cooperative, and, provided a replacement transformer fuse to Plaintiff, Danny Ray Mobley, or

defendant failed to adequately warn Plaintiff, Danny Ray Mobley of the risk of harm from being on the transformer, and

Second, defendant was thereby negligent, and

Third, such negligence of defendant Webster Electric Cooperative directly caused or directly contributed to cause any damage plaintiff may have sustained.

Because we have ruled that Plaintiff's failure to warn submission lacked evidentiary support, we address only Webster's complaints under point II concerning the submission on furnishing the fuse. Webster argues Instruction No. 7 attempted to submit a claim of Webster's negligence for furnishing Plaintiff a defective product and MAI 25.10(A) and 25.10(B) are designed for the submission of such issues.

■■■■ Webster offered, and the court refused, Instructions A and C as alternatives to Instruction No. 7.[2]

Instruction A, based on MAI 25.10(B) stated:

In your verdict you must assess a percentage of fault to defendant, whether or not plaintiff was partly at fault, if you believe:

First, defendant, through one of its employees acting in the course and scope of his employment, supplied the transformer fuse for use, and

Second, the fuse was dangerous when put to a reasonably expected use, and

Third, the fuse was put to a reasonably expected use, and

Fourth, defendant knew or in the exercise of the highest degree of care should have known of such danger, and

Fifth, defendant failed to exercise the highest degree of care to adequately warn of the danger, and

Sixth, such negligence directly caused or directly contributed to cause damage to plaintiff.

Acts were within the "scope and course of employment" as that phrase is used in this instruction if:

1. they were part of the work such employee was employed to perform, and

2. they were done by such employee to serve the business of defendant.

M.A.I. 25.10(B) [1990 New], 13.05 [1990 Revision] Submitted by Defendant

Instruction B, based on MAI 25.10(A), stated:

In your verdict you must assess a percentage of fault to defendant, whether or not plaintiff was partly at fault, if you believe:

First, defendant, through one of its employees acting in the course and scope of his employment, supplied the transformer fuse for use, and

Second, the fuse was dangerous when put to a reasonably expected use, and

Third, the fuse was put to a reasonably expected use, and

Fourth, the defendant had no reason to believe that those for whose use the fuse was supplied would realize its dangerous condition, and

Fifth, defendant knew or had information from which defendant, in the exercise of the highest degree of care, should have known of such dangerous condition, and

---

2. Webster also offered Instructions C and D which were refused by the trial court. These two instructions required Webster to exercise only ordinary care and were properly refused.

Webster, as a supplier of electricity, is required to exercise the highest degree of care. *Mrad,* 649 S.W.2d at 940; *Foote,* 359 S.W.2d at 43.

Sixth, defendant failed to adequately warn of such dangerous condition, and

Seventh, defendant was thereby negligent, and

Eighth, such negligence directly caused or directly contributed to cause damage to plaintiff.

Acts were within the "scope and course of employment" as that phrase is used in this instruction if:

1. they were part of the work such employee was employed to perform, and

2. they were done by such employee to serve the business of defendant.

M.A.I. 25.10(A) [1990 New], 13.05 [1990 Revision] Submitted by Defendant

MAI 25.10(A) and 25.10(B) are designed to submit claims of negligently furnishing a dangerous instrumentality. Sections 388 and 392, Restatement of Torts (Second) (1965), were approved in *Morris v. Shell Oil Co.*, 467 S.W.2d 39, 42 (Mo.1971), and *Ridenhour v. Colson Caster Corp.*, 687 S.W.2d 938, 945 (Mo.App.1985), respectively. MAI 25.10(A) is designed for submission under § 388, and MAI 25.10(B) is designed for submission under § 392.

Liability arises under § 388 only when the product supplied either malfunctions or fails. *Spuhl v. Shiley, Inc.*, 795 S.W.2d 573, 580 (Mo.App.1990). There, plaintiff attempted to plead a cause of action for negligent failure to warn tracking MAI 25.06 (now 25.10(A)) but did not plead the product malfunctioned. The Court said, "Consequently, we must conclude that, although not expressly set forth in *Restatement* section 388 or MAI 25.06, product malfunction or failure is an essential element of a claim for negligent failure to warn." *Id.*

Likewise, one of the elements of a negligent failure to warn case under § 392 is "the chattel was defective, the defect was discoverable on inspection, and the defect caused the accident." *Steenrod v. Klipsch Hauling Co., Inc.*, 789 S.W.2d 158, 168 (Mo.App.1990).

Here, no evidence revealed the fuse was defective, failed or malfunctioned. In fact, Webster concedes in its brief the fuse was

not inherently harmful since it was passed to the jury. Plaintiff's injury resulted from supplying him a fuse without a warning for installation in a transformer next to energized electric lines and not from a defect in the fuse.

Instructions A and B hypothesize the fuse was dangerous as required by MAI 25.10(A) and 25.10(B). As we have observed, the fuse was not dangerous. The danger arose only from the act of installing it. Therefore, the trial court properly refused Instructions A and B because those instructions submitted claims not supported by the evidence.

Webster correctly contends Instruction No. 7 is deficient because the mere furnishing of a chattel is insufficient to expose a defendant to liability. As submitted, the jury was allowed to hold Webster liable for furnishing Plaintiff a fuse. Obviously, this instruction failed to properly submit Webster's duty and breach of duty. Under the cases we have discussed and the facts of this case, Instruction No. 7 failed to require the jury to find that furnishing Plaintiff the fuse presented a foreseeable risk of injury, that Webster knew or in the exercise of the highest degree of care should have known of the risk and failed to warn of it. Instruction No. 7 was improper for these reasons.

No MAI is applicable to the facts of this case. Upon retrial, a verdict directing instruction not in MAI must be given. Rule 70.02(e). The instructions preceding the MAIs suggest that when "an approved instruction does not fit your case precisely but one or more instructions are close to it, modifications must be made. Occasionally, the modification will be made by incorporating part of another MAI." MAI 4th "How to use this Book, p. XXXV [1991]. MAI 25.10(A) is "close" to Plaintiff's case, and modifications of that instruction would appear to be appropriate.

### REMAINING POINTS

■ Some of Webster's remaining nine points must be addressed in view of our remand. Point VII urges that the trial

court erred in giving Instruction No. 8 patterned after MAI 13.07(1) and refusing to give MAI 13.05.[3] Instruction No. 8 reads as follows:

Acts of the person in the warehouse were within the "scope and course of agency" as that phrase is used in this instruction if:

First, the conduct of Webster Electric Cooperative was such that an ordinarily careful and prudent person would believe that the person in the warehouse had authority to perform such acts on behalf of Webster Electric Cooperative, and

Second, Danny Ray Mobley reasonably relied on such conduct of Webster Electric Cooperative at the time of the transaction mentioned in the evidence.

Webster offered evidence from its employees in the warehouse that none of them gave Plaintiff a fuse, including Derek Todd, who was the only Webster employee in his 20s working in the warehouse. However, the evidence was clear that other people were in and around Webster's warehouse on the day in question such as crews from other electrical companies.

Plaintiff presented no evidence that the young man who gave him a fuse was employed by Webster. Therefore, under the evidence, the issue was the apparent authority of the young man in the warehouse. Plaintiff's evidence bearing on that issue has been earlier set forth.

■ First, we offer an observation on certain terminology in Instructions Nos. 7 and 8. Plaintiff's verdict directing instruction No. 7 in paragraph First required the jury to find the person in the warehouse was acting within the "scope and course of his employment." The "Notes on Use" under both MAI 13.05 and MAI 13.07(1) indicate when that phrase or "scope and course of agency" is used, it must be defined. The "Notes on Use" must be religiously followed. *Royal Indem. Co. v. Schneider*, 485 S.W.2d 452, 458 (Mo.App.

1972). The opening paragraph of Instruction No. 8 used the phrase "scope and course of agency" which may have been misleading to the jury in light of the terminology in paragraph First of Instruction No. 7. We need not rule upon the effect of this lack of consistent terminology but discuss it in view of the necessity of a retrial.

Webster asserts that MAI 13.07(1) is appropriate in cases arising out of consensual transactions, i.e., contract cases, and has nothing to do with tort liability. The cases Webster cites to support this proposition do not make such a distinction.

The "Committee Comment" under MAI 13.07(1) cites *State ex rel. Massman v. Bland*, 355 Mo. 17, 194 S.W.2d 42 (1946), for a discussion of apparent authority in tort cases. While *Massman* is not factually similar to the instant case, we believe the committee comment is a clear indication that in appropriate cases, MAI 13.07(1) applies to tort cases.

Webster further argues that, assuming the concept of apparent authority applies to tort liability, the evidence was insufficient to support the submission of Instruction No. 8.

An apparent agency may be created where the conduct of the principal is such that an appearance of agency is created. When the principal's acts or conduct lead the public to believe that the agent possesses authority to act in the name of the principal, the principal is bound by the acts within the scope of the agent's apparent authority as to persons who have reasonable grounds to believe that the agent has such authority and in good faith deal with the agent.

*Eyberg v. Shah*, 773 S.W.2d 887, 890 (Mo. App.1989).

Webster does not dispute that Plaintiff was given a fuse at its warehouse. Therefore, Instruction No. 8 was supported by evidence that Webster allowed a person to be present in the warehouse who knew where to locate and identify transformer

---

3. MAI 13.05 defines the scope and course of employment as opposed to defining the apparent authority of an agent.

fuses. That person was further allowed to act in response to Plaintiff's request for a fuse and identify the fuse Plaintiff needed. Webster's conduct could lead the public to reasonably believe the young person had authority to act on behalf of Webster under these circumstances. Where there is conflicting evidence regarding the existence of agency, the issue is one for the fact-finder. *Id.*

With the limitation earlier discussed, we hold that Instruction No. 8 was not erroneously given under the unique facts of this case.

In point VIII, Webster contends the trial court erred in refusing to give tendered Instructions G and H since the evidence supported a finding that Plaintiff trespassed on Webster's pole and transformer.

The refused instructions read:

#### Instruction G

In your verdict you must not assess a percentage of fault to defendant if you believe:

First, at the time of his injury plaintiff was attempting to install a fuse on the transformer, and

Second, plaintiff was doing so without the consent of defendant.

#### Instruction H

In your verdict you must not assess a percentage of fault to defendant if you believe plaintiff did not have defendant's consent to perform work on the electrical apparatus on the pole.

We discussed Plaintiff's status under point I and concluded there was sufficient evidence to allow the jury to find Webster's conduct was an invitation for Plaintiff to install the fuse. Our conclusion was based upon the rule that an invitation to enter upon premises can be based upon the possessor's conduct. *Taylor*, 826 S.W.2d at 59.

Instructions G and H both hypothesize that Webster cannot be liable to Plaintiff unless Webster consented to Plaintiff installing the fuse. These instructions do not square, as a matter of law, with *Taylor* and similar cases which hold that a person entering the premises can be an invitee without regard to any consent of the possessor. Since the jury could find Plaintiff was an invitee based upon Webster's conduct, lack of consent would not shield Webster from liability. Both instructions were properly refused.

In point IX, Webster contends the trial court erred in refusing to give Instructions I and J since the evidence supported an instruction that Plaintiff knew of the danger and a warning was not required.

Instruction I states:

There is no duty to warn a person of a danger of which he knows of or that he should know of in the exercise of ordinary care.

Not in M.A.I.

Instruction J states:

A person is not entitled to a warning of a danger that is already known to him.

Not in M.A.I.

During cross-examination, Plaintiff admitted he was knowledgeable about certain dangers and characteristics of electricity. Based on this evidence, Webster believes these instructions were appropriate. Webster cites cases like *Shine v. Southwestern Bell Telephone Co.*, 737 S.W.2d 203 (Mo. App.1987), holding that "[i]t is not actionable negligence to fail to give a warning of the existence of a condition to one who has actual knowledge thereof as the law will not require the performance of a useless act." *Id.* at 205. No doubt, Webster refers to a correct legal principle.

However, Instructions I and J are improper deviations from the requirements for instructions not in MAI. Both instructions are simply abstract statements of law requiring no finding by the jury. Regarding an instruction of this type, the Court in *Anderson v. Sellers*, 521 S.W.2d 33 (Mo. App.1975), said:

"Such instructions tend to mislead and confuse the jury and are properly refused." *Chism v. Cowan*, 425 S.W.2d

942 (Mo.1967). They are "as objectionable since the adoption of MAI as they were prior to that time. * * * Indeed, having the purposes of MAI in mind, it would seem that they are even more objectionable now." *State ex rel. Burgess v. Neaf,* 439 S.W.2d 190, 194 (Mo. App.1969).

*Id.* at 37–38.

This rule is further clarified in *Henderson v. St. Louis Housing Auth.,* 605 S.W.2d 800 (Mo.App.1979), where the Court explained:

> Since there is no applicable MAI instruction, an instruction must be formulated in accordance with Rule 70.01(e) V.A.M.R. [now Rule 70.02(e)]. Such an instruction must be "simple, brief, impartial [and] free from argument...." The instruction must submit ultimate facts, not abstract statements of law, *Furlow v. Laclede Cab Co.,* 502 S.W.2d 373, 379 (Mo.App.1973), and an instruction not in MAI should only submit ultimate facts which are within the general scope of the pleadings. *Price v. Seidler,* 408 S.W.2d 815, 824 (Mo.1966).

*Id.* at 803.

Because Instructions I and J only submitted abstract statements of law, the trial court properly refused them.

■ The final point we discuss is point XI where Webster alleges the trial court abused its discretion in refusing to admit evidence of a warning sign on Plaintiff's aluminum ladder because the warning was relevant and material to show Plaintiff's knowledge of the danger of using the ladder around electrical equipment.

The warning on the ladder stated:

> "CAUTION": Electrical shock hazard. Metal ladders should not be used where contact may be made with electrical circuits.

Plaintiff's motion in limine was sustained regarding introduction of this warning. The court excluded both the ladder and a photograph of the warning sign on the ladder. Webster made an offer of proof on both items.

In reviewing this point, we must give substantial deference to the trial court's ruling on admissibility of evidence, and that ruling will not be disturbed absent a showing of abuse of discretion. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991). Abuse of discretion occurs where the trial court's ruling "is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.*

We find no abuse of discretion in the trial court's ruling because the warning on the ladder was merely cumulative to Plaintiff's own admissions. Webster read into evidence portions of Plaintiff's deposition where Plaintiff stated he had seen materials about safety around electricity such as "don't get your ladders in overhead wires," as well as pictures of "a ladder and that type of stuff against wires," with a "don't do it" warning.

■ Clearly the warning on the ladder was cumulative evidence which is defined as "additional evidence of the same kind bearing upon the same point." *Sampson v. Missouri Pacific R.R. Co.,* 560 S.W.2d 573, 590 (Mo. banc 1978). The admission of cumulative evidence is within the sound discretion of the trial court. *State ex rel. Missouri Highway and Transp. Comm'n v. Conley Dev. Co.,* 628 S.W.2d 683, 684 (Mo.App.1982).

Webster's remaining five points concerning trial errors are not necessary to rule. On retrial, it is not likely the alleged errors will arise in the same context.

The judgment against Webster is reversed, and the case is remanded for a new trial.

PREWITT and GARRISON, JJ., concur.