247 S.W.2d 706 (1952)
LE GRAND
v.
U-DRIVE-IT CO.
No. 42571.
Supreme Court of Missouri, Division No. 1.
March 10, 1952.
Rehearing Denied April 14, 1952.
*708 Louis E. Miller, Miller & Landau, B. Sherman Landau, St. Louis, for appellant.
Moser, Marsalek, Carpenter, Cleary & Carter, Frank X. Cleary, Julian C. Jaeckel, O. P. Owen, St. Louis, for respondents.
CONKLING, Presiding Judge.
Mont H. LeGrand, plaintiff-appellant (hereinafter called plaintiff) appealed from an adverse judgment entered upon the jury's verdict in his personal injury action against The U-Drive-It Company, a corporation and James Olsen, wherein plaintiff had sought damages of $37,960. Plaintiff, while walking east across Broadway, was struck by the northbound automobile driven by Olsen, which Olsen had rented from U-Drive-It. The collision occurred at the intersection of Broadway and LeBaume Street in St. Louis, Missouri, about 1:30 A. M., on June 22, 1949.
As against U-Drive-It, plaintiff's case was submitted to the jury upon the theory that U-Drive-It had rented to Olsen a certain Ford coach automobile with defective brakes, and that Olsen was driving that automobile when plaintiff was struck. As against Olsen, plaintiff's case was submitted to the jury upon primary negligence only, in that while operating the Ford coach rented from U-Drive-It at the time and place in question, Olsen operated the Ford coach at a rate of speed which was high, excessive and dangerous under the circumstances. The separate answer of each defendant pleaded plaintiff's contributory negligence in that "plaintiff negligently moved into the path of said automobile when said automobile was so close to plaintiff that it was impossible for James Olsen to avoid said collision".
Plaintiff assigns error in the giving of defendants' requested instructions numbered 7, 10 and 11; in the admission of certain evidence; and in the alleged injection into the case by defendant of a false issue.
On the night in question plaintiff had parked his car on the east side of Broadway north of LeBaume and went to The Dutch Kitchen on the southwest corner of Broadway and LeBaume to purchase cigarettes. He stayed in there about 30 minutes. He there purchased cigarettes and drank a bottle of beer. When he left he walked north on the west side of Broadway to the cross walkway extending across Broadway even with the south side of LeBaume. He then walked east across Broadway. While so doing he was struck by the northbound automobile driven by Olsen.
Instruction Number 7 submitted the defense of contributory negligence in the respect pleaded in the answers. Plaintiff contends *709 that submission by instruction 7 is without supporting evidence in the record. With particularity we will state those portions of the evidence which it is contended support the contributory negligence submission.
Broadway is a principal thoroughfare in St. Louis, extends north and south and is about 50 feet wide. In the center of Broadway there are two sets of tracks, one for northbound and one for southbound street cars. The west rail of the southbound track is substantially the same distance from the west curb of Broadway, as is the east rail of the northbound track from the east curb of Broadway. LeBaume Street runs into Broadway from the west but does not extend east from Broadway. LeBaume Street is about 35 feet wide.
On his direct examination at the trial plaintiff testified that as he started to walk across Broadway he saw no automobiles moving either north or south on Broadway; that he was between the two street car tracks when he first saw defendant's automobile moving north, and then judged it to be about 140 to 150 feet south of him; that he next noticed it "when I was crossing the east rail"; that the automobile was then "a straddle the east rail"; that he watched the course of the automobile from the time it was 45 feet away from him; that he "proceeded to make a couple of fast steps" and was struck by the left front corner of defendant's automobile when "within 7 or 8 feet of the (east) curb", about half way from the east rail to the east curb; that before he was struck he heard the screeching of brakes; that the streets were dry; and that when the automobile was 40 to 45 feet south of him it was moving 40 to 45 miles per hour.
Plaintiff's deposition was taken before the trial. He testified that upon his deposition and at the end thereof he was asked and stated, as follows:
"Q. You didn't have any trouble understanding any of my questions, did you, here today? A. Not so far, no sir.
"Q. You understood every question I asked you? A. I think so".
He further testified that upon the deposition he was asked and stated, as follows:
"Q. When you left the sidewalk on the west side there of Broadway, did you look north and south to see anything coming? A. I looked north and I looked south.
"Q. What did you see, if anything? A. I didn't see anything coming south.
"Q. Well, I am talking about either direction. A. I seen this car coming north.
"Q. Where was that then? A. Well, he was to my right, south of me about 145 feet. * * *
"Q. Did you see that automobile at any time before the accident? A. Yes, sir, I did.
"Q. Where was it when you first saw it? A. It was about 45 to 50 feet south of where I was crossing the street.
"Q. Well, where were you then? A. I was about the middle part of the street car tracks.
"Q. Did you start to run? A. I made a couple of running fast steps, yes, sir.
"Q. When you were midway between the two tracks, you looked at your right and saw this automobile, how far was it away from you at that time? A. Around, I judge, 40 to 50 feet."
Plaintiff signed his deposition on the morning of the trial in the court room. Before signing it he changed his answers to that portion of his deposition set out in the paragraph just above to conform largely to his above referred testimony upon his direct examination. He testified that he did so "because I found I had erred * * * after I read the deposition and taken it into consideration, I seen I had erred there", etc.
Plaintiff also testified upon the trial: "Q. Now did you at any time start to run, Mr. LeGrand, while you were crossing the street? A. Well, not what you would call a run. I madewhen I noticed the car 40 or 45 feet of me I made fast steps to get on across."
Police Officer Rice was one of a number of officers who arrived on the scene shortly after the collision and while plaintiff was still lying in the street where he had fallen. Officer Rice talked to plaintiff. Rice testified plaintiff told him that as he was crossing the street, "he (plaintiff) observed this *710 car coming north on Broadway, but he (plaintiff) thought he (plaintiff) could make it". Wanda Louise Null testified that she had been in The Dutch Kitchen dancing since 9:30 P. M., that about 1:30 A. M. she came out onto the sidewalk on Broadway and was "standing kind of to one side of the door, leaning up against the wall * * * to get some fresh air", but that she "didn't notice Mr. LeGrand until he was hit by the left front fender of the automobile". Defendant Olsen testified he thought plaintiff came from behind a southbound automobile; that he did not see plaintiff until he was "four or five or six feet from the automobile * * * just entering the path of the car"; that he applied the brakes as soon as possible; and plaintiff was struck by the left center of the automobile.
In the consideration of plaintiff's first assignment of error that there was no evidence to support the contributory negligence submission of instruction 7, the question before us is not whether Olsen was or was not negligent. We are called upon to determine from all the evidence in the case, and considered most favorably to defendant, whether there was or was not sufficient evidence, or reasonable inference therefrom, to warrant the giving of instruction 7 that if the jury found "from the evidence that plaintiff negligently moved into the path of the automobile * * * when said automobile was so close to plaintiff that it was impossible for defendant Olsen to have avoided the collision, and that in so doing, if you so find, he (plaintiff) was not exercising ordinary care, and that such failure, if you so find, directly caused or contributed to plaintiff's injuries, then you should find that plaintiff is guilty of contributory negligence and he cannot recover herein, and your verdict must be in favor of both defendants." Without regard to whether Olsen was or was not negligent, upon a proper submission of the defense of contributory negligence, defendants were entitled to a verdict if plaintiff was also guilty of negligence which contributed directly to cause his injuries. "Freedom from negligence (on the part of defendant) is not one of the essentials of his defense of contributory negligence". Rembusch v. Prebe, 358 Mo. 409, 215 S.W.2d 433; Montgomery v. Ross, Mo.Sup., 218 S.W.2d 99, 102.
Considered most favorably to the defendant the evidence shows (and the jury could have found) that when plaintiff was in the middle of the street he saw the northbound automobile approaching at a speed of 40 to 45 miles per hour and that it was then 45 feet south of him; that he thereafter watched the course of the automobile, which obviously veered to the east; that plaintiff moved on east making fast steps "to get on across" thinking he could make it; that plaintiff entered the path of the automobile when it was within 4 or 5 or 6 feet of him and was struck by the left front corner or fender of the car. Clearly that testimony and the inferences therefrom support the above quoted submission of contributory negligence made in instruction 7.
Generally, in a case of this kind, contributory negligence is a question for the jury under proper instructions unless the conduct of the one so charged "brings it within the exception that places upon the court the duty to declare, as a matter of law, that contributory negligence exists". But the issues and contentions upon this appeal do not require us to determine plaintiff's conduct under that last rule as to whether plaintiff was guilty of contributory negligence as a matter of law. The question here is only whether the evidence warranted and supported the submission in instruction 7. The instant facts are much like those ruled in Iman v. Walter Freund Bread Co., 332 Mo. 461, 58 S.W.2d 477. But in any event, under this evidence and the primary negligence submission, the question of plaintiff's contributory negligence was certainly one for the jury. Ginter v. O'Donoghue, Mo.App., 179 S.W. 732; Rubick v. Sandler, Mo.App., 219 S.W. 401. And we rule that the evidence before us supports the submission of contributory negligence in instruction 7.
Plaintiff also contends, as to instruction 7, that it fails to hypothesize the requisite facts pertaining to the relative position of plaintiff and defendant's automobile; and fails to submit a single fact pertaining to Olsen's excessive speed or the defective condition of the brakes. The *711 alleged and claimed excessive speed of the automobile and any claimed defective condition of the brakes have no relationship whatever to the contributory negligence alleged, established by the proof and submitted in the instruction. Plaintiff in his brief states that under this instruction the jury could have found the speed was dangerous and the brakes defective. Surely the jury could have done so. But assume defendants were negligent, if plaintiff was negligent as the jury could have found, it makes no difference that defendants were negligent. Plaintiff cites and relies on Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54, 56 and in his reply brief, on Yates v. Manchester, 358 Mo. 894, 217 S.W. 2d 541. What was said in those cases does not rule the instant contention. It may be said to be generally true that, "It is the settled rule that an instruction purporting to cover the whole case and authorize a verdict should require the finding of all facts necessary to sustain the verdict", or that such instructions "must require the finding of all essential fact issues necessary to establish the legal propositions upon which the right to it is based". (Emphasis ours.) The difficulty lies not with the rule of those last two cases but with its application.
We have here only a simple question of contributory negligence. The above quoted allegation of contributory negligence appearing in the answers is quite simple. When the evidence supports, and we have above held that it does, the allegations of the answer, then in fact plaintiff was guilty of contributory negligence. Iman v. Walter Freund Bread Co., supra. And if instruction 7 submits the simple issue of contributory negligence in the substance of the allegations in the answers, then all has been submitted which, under the instant circumstances, is required to be submitted by the general principles laid down in Yates v. Manchester, supra, and Stanich v. Western Union Tel. Co., supra. It is merely a question of what is "essential" or "necessary" in any given case. In this case and under these circumstances no more is essential or necessary to be submitted than that the jury be required to find that plaintiff negligently moved into the path of the automobile when said automobile was so close to plaintiff that it was impossible for Olsen to have avoided the collision. The instruction does not conflict with plaintiff's instructions 1 and 2. Plaintiff's contentions as to instruction 7 are without merit.
Plaintiff next contends that instruction 10 is reversibly erroneous. That cautionary instruction is as follows: "The Court instructs the jury that the mere fact of itself that plaintiff was injured and has brought suit claiming defendants were negligent is no evidence whatever that the defendants were in fact negligent. Negligence is not in law presumed, but must be established by proof as explained in other instructions. Neither are you permitted to base a verdict entirely and exclusively on mere surmise, guesswork and speculation; and if upon the whole evidence in the case, fairly considered, you are not able to make a finding that defendants were negligent without resorting to surmise, guesswork and speculation outside of and beyond the scope of the evidence, and the reasonable inferences deductible therefrom, then it is your duty to, and you must, return a verdict for the defendants." This instruction, in almost this exact language, was approved by this court in Gardner v. Turk, 343 Mo. 899, 123 S.W.2d 158. The slight difference between this instruction and the Gardner v. Turk instruction A, see 123 S.W.2d loc.cit. 161 is in the fact that Gardner v. Turk was an action for wrongful death and in the first paragraph the Gardner case instruction used the words "decedent lost his life", instead of the words "plaintiff was injured" used in the first sentence of the instant instruction. Plaintiff contends that difference is significant and vital. Of that contention, more later. In the nearly 14 years since the opinion in Gardner v. Turk was filed, this court has cited and referred to this point as ruled in the Gardner case in many subsequent cases. What has since been said about it has not detracted one iota from the force of what was said on this point in Gardner v. Turk, and the rule stated in the Gardner case is now the rule in this state.
Contending instruction 10 was reversibly erroneous in this case, plaintiff cites such cases as Walker v. Quincy, O. & K. C. R. *712 Co., Mo.Sup., 178 S.W. 108; Myers v. City of Independence, Mo.Sup., 189 S.W. 816; Orris v. Chicago, R. I. & P. Ry. Co., 279 Mo. 1, 214 S.W. 124; and Reynolds v. Maryland Cas. Co., 274 Mo. 83, 201 S.W. 1128. Limited space forbids extended analysis of those cases. They do not rule this contention. The last above styled cases from this court preceded by some years our opinion in Gardner v. Turk, and a reading of those cases would readily distinguish them in any event. Plaintiff argues that instructions, such as the instant instruction 10, have been approved only in death cases such as Gardner v. Turk. But it appears that in Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, an action for personal injuries (not death) the verdict and judgment were for defendant and plaintiff appealed. Instruction A in that case told the jury that, "* * * the fact that plaintiff was injured is, in itself, no evidence of any negligence on the part of defendant", etc., and that language was specifically approved and held there that it did not make the instruction erroneous. In his brief plaintiff argues that "The nature of his (plaintiff's) injuries and their severity and extent, provided strong and cogent corroboration of plaintiff's testimony" (that defendant was negligent). (Emphasis ours.) But instruction 10 merely tells the jury that "the mere fact of the injury of itself that plaintiff was injured * * * is no evidence whatever that the defendants were in fact negligent." Nothing is said in instruction 10 as to the character of plaintiff's injuries and there is nothing in the instruction from which the jury could conclude that the character or nature of plaintiff's injuries could not be considered. This instruction is unlike the one considered in Orris v. Chicago, R. I. & P. Ry. Co., supra, for here the jury is told that "the mere fact of itself (and without more) that plaintiff was injured" is no evidence of negligence. It thus limits such statement to the mere fact (alone and of itself) that plaintiff was injured. It thus does not even infer that the nature or character of plaintiff's injuries may not be some evidence of negligence. Our ruling here does not conflict with Orris v. Chicago, R. I. & P. Ry. Co., supra.
Plaintiff also contends that instruction 10, by the inclusion of that portion thereof forbidding the jury to base a verdict "entirely and exclusively on mere surmise, guesswork and speculation" is reversibly erroneous, because that language denuded plaintiff's circumstantial evidence of probative force. We cannot agree. We have recently approved, and we think rightly so, instructions telling a jury that verdicts may not be based on guesswork, conjecture, surmise, speculation outside of and beyond the scope of the evidence, and the reasonable inferences deducible therefrom. West v. St. Louis Public Service Co., Mo.Sup., 236 S. W.2d 308, 312, 313; Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366, 371; Schlemmer v. McGee, Mo.Sup., 185 S.W.2d 806. In Mendenhall v. Neyer, supra, it was contended that the considered portion of the instruction denuded and withdrew plaintiff's circumstantial evidence from the jury. The considered portion of the instruction was [347 Mo. 881, 149 S.W.2d 371]: "You have no right to indulge in guesswork, conjecture, surmise or speculation, but you must confine yourselves to the facts detailed in evidence, and to the inferences to be drawn directly therefrom." In there ruling the contention this court said: "The instruction did not expressly withdraw any evidence from the jury. Respondent's contention ignores the clause `and to the inferences to be drawn directly therefrom,' which explicitly recognized the right of the jury to consider circumstantial evidence in arriving at their verdict." In West v. St. Louis Public Service Co., supra, an instruction almost exactly like the instant instruction 10 was approved. We there said [236 S.W.2d loc.cit. 313]: "We have held repeatedly that the giving or refusal of cautionary instructions is largely within the discretion of the trial court and that where the trial court has endorsed the propriety of cautionary instructions by denying a motion for a new trial, we will not interfere unless the exercise of discretion has been clearly erroneous." See also, Williams v. Guyot, 344 Mo. 372, 126 S.W.2d 1137. One of the accepted and approved meanings of speculation is the act of theorizing "about a matter in which evidence is not sufficient *713 for certain knowledge". City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, McDonald v. F. W. Woolworth Co., 66 R.I. 488, 20 A.2d 250; Webster's New International Dictionary (2nd Ed.). Such would be the understanding of a jury when the word "speculate" is used in the instruction in this context. We approved the instruction in the West case and reapprove it in this case under the instant circumstances. Plaintiff's contentions as to instruction 10 are overruled.
Plaintiff contends that instruction No. 11 is reversibly erroneous and points to the below quoted opening words of that instruction, as follows: "The court instructs the jury that even though the plaintiff may have been injured on the occasion in question, provided you find from the evidence that he was so injured" that plaintiff could not recover damages unless his injuries were the direct result of defendant's negligence. It is plaintiff's contention that it is undisputed in the record that plaintiff received serious and extensive injuries, and that the quoted words of the instruction question and unduly minimize the importance of his injuries. The opinion of the Court of Appeals relied on by plaintiff to support his position on this point, Eisenbarth v. Powell Bros. Truck Lines, 235 Mo.App. 442, 125 S.W.2d 899, 903, was disapproved by this court in Mendenhall v. Neyer, supra, with the statement that it should not be followed. Another reason for disallowing the instant contention is that the instruction is with respect to plaintiff's injuries and in this case the jury's verdict was for defendants. If it were error (which we do not concede) it was harmless because the jury never reached the point in this case of the consideration of plaintiff's injuries or the allowance of any damages therefor. The verdict of nonliability compels the conclusion that the jury did not even consider or deliberate upon whether plaintiff was injured. And since they did not deliberate upon the injuries, plaintiff clearly could not have been prejudiced. Mendenhall v. Neyer, supra. And too, even if there was no dispute in the evidence as to whether plaintiff was injured, to find for plaintiff the jury nonetheless had to find the fact that plaintiff was injured, and the jury had the right to disbelieve plaintiff's testimony upon that point even though there was no evidence to the contrary. Steckdaub v. Sparks, Mo.Sup., 231 S.W.2d 160; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558.
It is also contended the instruction restricted plaintiff's recovery, if any, to a recovery against both defendants, instead of permitting it as to either or both. We do not agree with plaintiff's reading and interpretation of the words used in the latter half of the first paragraph of the instruction. But in any event the instruction could not have been prejudicial. The entire first paragraph of the instruction is in the nature of a measure of damage instruction and deals with injuries and possible damages to be allowed in the event of a verdict for plaintiff. The jury found for the defendants, and, as above noted, the conclusion cannot be escaped that they did not deliberate upon any question of injuries, or of damages, or as to which defendant, if either, should be compelled to pay any damages. Clearly, then, in any event the giving of the instruction was not prejudicial. We are cognizant of the exceptions noted in Gower v. Trumbo, Mo.Sup., 181 S.W.2d 653, 656, and Degan v. Jewell, 293 Mo. 80, 239 S.W. 66, to the last above stated rule of Mendenhall v. Neyer, supra. But the verdict for defendants in this case must have been and had to be upon the sole ground that plaintiff's injuries resulted from his own contributory negligence, and not on the ground plaintiff was not injured at all. There was no evidence plaintiff was not injured. It clearly was an instance where the jury did not deliberate upon the amount of an award of damages, or of which defendant, if either, or whether both defendants, should be assessed with a penalty for damages. That fact clearly demonstrates that the giving of the instruction was not reversible error. Mendenhall v. Neyer, supra; Degan v. Jewell, supra; Fraser v. California Street Cable R. Co., 146 Cal. 714, 81 P. 29, 30; Schlaifer v. Omaha & Council Bluffs St. Ry. Co., 98 Neb. 207, 152 N.W. 370; Oak Island Hotel Co. v. Oak Island Grove Co., 165 Mass. 260, 42 N.E. 1124;
*714 Johnston v. Owens, 21 Wash.2d 892, 153 P. 2d 879. The contentions as to instruction 11 must be denied.
Plaintiff also contends that the admission of conclusions of Officer Rice was reversible error. At the time of the collision the officer was four blocks away in a restaurant. He came to the scene, talked to the parties, and those who had there congregated, and made a written police report. He frankly testified he was not there and did not see the accident happen. From his investigation he had written upon his report that the accident occurred 50 feet north of LeBaume Street. On cross-examination by plaintiff's counsel, he was asked: "Q. Well, why is it that you say he was struck fifty feet north of there if you don't know it yourself? A. I don't know it." It was very clear to the jury that the officer did not see it, did not know exactly where the collision had occurred, but that from his investigation, he had so recorded it as stated on his police report. What the report showed was not objected to at the trial upon the grounds now made in this court. We think it was of no consequence, and not prejudicial for the jury clearly knew the officer was not present. Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, cited by plaintiff, involved the State Patrolman reaching a conclusion himself as to where the collision occurred based upon the patrolman's own examination of the physical conditions as he observed them and found them after the accident. There was no prejudicial error in any event, the matter was insignificant and the contention must be denied.
It is contended next that defendant injected false and extraneous issues into the case. Plaintiff's witness Null testified she had been married to a man named Clifton; and that Clifton had secured a divorce from her in Fredericktown, Missouri. That testimony coming in an cross-examination of the witness Wanda Null was received without any objection by plaintiff. Also without objection defendants proved by the Deputy Circuit Clerk in Fredericktown that she had checked the records and that the records in the circuit clerk's office there showed that no divorce suit of Clifton v. Clifton had ever been filed in that county. There having been no objection by plaintiff upon the trial, the matter may not be reviewed upon appeal. In any event, the extent of such inquiry rests largely within the discretion of the trial court. Gildehaus v. Jones, 356 Mo. 8, 200 S.W.2d 523. The contention made clearly presents no occasion for our consideration of it under our Rule 3.27.
Plaintiff also contends that it was prejudicial to his case that defendant Olsen testified he had two children, one a recent addition to the family; and that Mrs. Olsen testified they have two children. In neither instance was there either an objection to the testimony or a motion to strike it out of the record, or a request to admonish the jury to disregard it. Having failed to object, or take any timely action plaintiff may not now be permitted to have it reviewed in an appellate court. Under these circumstances the contention has no merit.
It is contended in appellant's brief that "admission of Olsen's self-serving statement to his co-defendant was erroneous." When Olsen returned the Ford coach to U-Drive-It on June 22, he reported the accident to the assistant manager of U-Drive-It, Ray Breske. The latter reduced Olsen's report to writing. Breske testified that he made out the written accident report. The report was offered as an exhibit but was later withdrawn and the record shows it was not read to the jury. We have carefully read Breske's testimony and the only questions he was asked concerning the contents of the report were upon the cross-examination by plaintiff's counsel, as to which plaintiff cannot complain. There was no error and the contention is overruled. Plaintiff also assigns error in Breske being permitted to state that on occasions when rented cars were returned to the U-Drive-It garage the records were not immediately marked as to the time such cars were returned; and that when the records were marked the time that would be shown would be the time of marking the card and not the time of the actual return of the car. We think the court properly permitted the explanation. That incident had nothing at all to do with the merits of the case as to whether defendants were negligent and whether plaintiff was contributorily *715 negligent, and could not possibly have affected the jury's decision in the case. We think it was wholly trivial and collateral. And it could not possibly be reversible error.
Plaintiff makes a complaint as to a claimed asserted statement made by defendant's counsel during defendants' opening statement. There is no page reference to the transcript in either plaintiff's statement, points relied on, or in his printed argument. Search of the record reveals no opening statement in the transcript. It merely shows an opening statement was made. Nor does it anywhere appear that any such asserted statement was made, or that any point whatever with respect thereto was saved. Clearly there is nothing here for us to consider with respect to this.
The judgment appealed from must be affirmed. It is so ordered.
All concur.