Laura Ann **ANDERSON**, by and through her next friend, Gladys Anderson, Plaintiff-Appellant,

v.

Terry **SELLERS**, Defendant-Respondent.

No. 36094.

Missouri Court of Appeals, St. Louis District, Division 4.

March 11, 1975.

**34**

Mogab, Hughes & Green, Inc., Frank B. Green, St. Louis, for plaintiff-appellant.

Fitzsimmons & Fitzsimmons Attys., Inc., Paul E. Fitzsimmons, Clayton, for defendant-respondent.

NORWIN D. HOUSER, Special Judge.

Laura Ann Anderson, a pedestrian aged 9½ years at time of injury, sued Terry Sellers, driver of an automobile, for $15,000 damages for personal injuries sustained by her when, as she was attempting to cross Big Bend Boulevard in St. Louis in the company of her 11-year-old sister, she was struck by the front end of Sellers' automobile.

Plaintiff's case was submitted to the jury on primary negligence—failure to keep a careful lookout. Defendant pleaded and submitted the defense of contributory negligence. A trial jury returned a verdict for defendant. Plaintiff appeals from the judgment entered on the verdict, contending that the trial court erred in giving Instruction No. 5, offered by defendant on the issue of contributory negligence, and that the trial court erred in refusing Instruction A, offered by plaintiff.

Instruction No. 5 follows:

"Your verdict must be for the defendant on the claim of the plaintiff Laura Anderson for damages if you believe:

"First, plaintiff Laura Anderson moved into the path of defendant's automobile when in the exercise of ordinary care she could have seen the movement of defendant's automobile and could have avoided contact with defendant's automobile; and

"Second, Laura Anderson was thereby negligent; and

"Third, such negligence of plaintiff Laura Anderson directly caused or directly contributed to cause any damage plaintiff Laura Anderson may have sustained.

"The term 'negligence' as used in this Instruction with respect to plaintiff Laura Anderson means the failure to use that degree of care which an ordinarily prudent girl of the same age, capacity and experience would use under the same or similar circumstances."

Plaintiff complains that the simple requirement of a finding that plaintiff "moved into the path, etc." was prejudicially erroneous; that it failed to require a finding of any specific act or omission upon which to predicate a finding of negligence; that if it was intended to submit failure to keep a lookout it deviated from the form prescribed by MAI 17.05, to plaintiff's prejudice; and that if it was intended to submit failure to avoid a collision it should have required a finding of apparent danger of collision.

On the day in question the weather was warm, dry and sunny. The surface of the road was paved with asphalt, which was dry. Plaintiff was struck at a point on Big Bend Boulevard approximately 50 feet south of its intersection with Maple Avenue. At that point Big Bend runs north and south, is 36½ feet wide, has a yellow center dividing line and is essentially level. Lane markings provide two lanes for northbound traffic and two lanes for southbound traffic. Comfort Avenue intersects Big Bend one block south of Maple. Flora Avenue intersects Big Bend one block south of Comfort. There are no traffic signs or signals for the control of north or southbound traffic on Big Bend and no marked crosswalks crossing Big

Bend, at either the Comfort or Maple intersections. Defendant was northbound. He made a stop at Flora. He was not following any other northbound traffic as he approached the point of impact. The left side of his automobile was about two feet from the center line. When he arrived at Comfort, traveling about 20 m. p. h., he saw an automobile southbound on Big Bend which appeared to him to be stopped at Maple. Its driver was not signalling for a left turn. Defendant did not know why it was stopped or stopping. He did nothing about the southbound automobile. Defendant increased his speed as he continued north. When the front of defendant's automobile was about even with the front of the stopped southbound automobile defendant's speed was 25–30 m. p. h. At that time he for the first time noticed two girls, who appeared to be standing together about a foot and a half or two feet west of the center line of Big Bend. Up to the point where he first noticed the two girls defendant's view of the girls had been obstructed by the southbound automobile. When he first noticed the girls defendant applied his brakes. A second later, defendant saw plaintiff "dart" out in front of him; "she started to run across in front of me so I slammed on the brakes * * *." Defendant left skid marks in the lane in which he had been traveling, angling somewhat to the east as they proceeded north, variously estimated at 30, 40 and 55 feet in length. Defendant did not know how fast he was traveling at time of impact. Plaintiff was "flipped" in the air for a distance of 10–15 feet.

According to plaintiff and her sister Julie the two girls left the west curb of Big Bend and stopped when they reached the center line. At the center line they were holding hands. Before leaving the west curb they checked both ways for traffic, looking first to the north, then to the south. They were able to get to the center line without difficulty. They denied that they had any narrow escapes from southbound vehicles before reaching the center line. The only traffic in sight when they left the west curb was defendant's northbound automobile, which was about two blocks away at Flora at that time. By the time they stopped at the center line defendant's car had reached Comfort and was continuing north at undiminished speed, in the lane next to the center dividing line. Plaintiff saw defendant's car approaching, completely in its own lane with no part of it on the center line where she was standing. She did not know why the approach of defendant's car would cause her any problem, but she became frightened of being struck and in a state of panic broke away from Julie and ran into the path of defendant's moving car. She knew that she could get hurt if she got in front of a moving car. She heard the squealing of brakes before she started to run, and admitted that there may have been some cars going south as she started to run into the path of defendant's northbound car. When she broke away from her sister's grasp and started to run across the northbound lane she did not know how close defendant's car was to her. Julie did not recall if there were any automobiles proceeding southwardly when her sister pulled away from her and started to run into the northbound lane. She had no idea how close the defendant's car was when her sister began running into its path. She yelled at her sister but did not remember whether she heard the squealing of brakes before she yelled.

According to Roger Swierk, driver of a southbound car, there was another southbound car (which did not stop after the casualty and was never identified) traveling south some 200 feet in front of Swierk. The unidentified car's taillights lighted up, Swierk heard the squeal of tires, and the car ahead of him veered somewhat to the left, but not over the center line. At the same time Swierk noticed two girls entering Big Bend from between cars parked on the west side of Big Bend. The quick action of the driver of the unidentified car in swerving "gave the girls enough clearance and with the warning from the squeal of the tires, they parted company by turn-

ing sharply to the left and right respectively and ran in opposite directions," parallel with the parked cars. While this was happening Swierk was making an emergency stop, his tires squealing. Julie ran north, then east in front of the Swierk car, which narrowly missed her. Plaintiff ran a short distance south between the right side of the southbound unidentified car and the cars parked on the west side of Big Bend. The unidentified car, moving faster than plaintiff, passed her, whereupon plaintiff changed her course, first running southeast, then northeast and across the center line into the northbound lane where she was struck. According to Swierk, when plaintiff cleared the rear of the unidentified car defendant's automobile was about 50 feet back from plaintiff and plaintiff was 30–40 feet to the rear of the unidentified car. According to Swierk defendant slammed on his brakes as soon as plaintiff could be seen from the rear of the unidentified southbound car. Plaintiff continued running as defendant's car was skidding. While defendant's car was skidding the unidentified car was directly opposite defendant's automobile.

### Instruction No. 5.

There is no MAI form submitting the contributory negligence of a pedestrian who leaves a place of safety with actual or constructive knowledge of the approach of a moving vehicle and moves into the immediate path of the vehicle. In the pre-MAI case of Le Grand v. U-Drive-It Co., 247 S.W.2d 706 (Mo.1952), approval was given this language: " * * * plaintiff negligently moved into the path of the automobile * * * when said automobile was so close to plaintiff that it was impossible for [defendant] to have avoided the collision." In attempts to adapt MAI 32.01 to this situation the following instructions were given (but not approved *in form*) in Morris v. Duker, 414 S.W.2d 77 (Mo. 1967): " * * * plaintiff * * * left a place of safety and walked into the immediate path of defendant's vehicle"; and Young v. Grotsky, 459 S.W.2d 306 (Mo.

1970): " * * * plaintiff * * * stepped into the path of [defendant's] automobile when it was not reasonably safe to do so."

Defendant patterned Instruction No. 5 after Instruction No. 6 in Krez v. Mickel, 431 S.W.2d 213 (Mo.1968), which directed a verdict for defendant if the jury believed that plaintiff "failed to move out of the path of defendant when in the exercise of ordinary care she could have seen the movements of defendant and could have avoided coming in contact with him," and that plaintiff was thereby negligent. Mrs. Krez, standing on the edge of a public sidewalk, was knocked down by a pedestrian who was running along the sidewalk. She saw five boys approaching her, running, had time to take one step backwards (which would have put her in a safe position behind a steel barricade) but did not make the move. The question was whether Instruction No. 6 was supported by the evidence. The propriety of the *form* of the instruction was not in issue and was not ruled upon.

The ultimate fact in the case before us is whether the injured party negligently and needlessly exposed herself to harm with actual or constructive knowledge of the impending force. Although Instruction No. 5 is no model for a pattern instruction we approve its use in the circumstances of this case and consider that it sufficiently complies with the requirements of Rule 70.01(e), V.A.M.R. In simple, brief, impartial language, without argument, it submits ultimate facts, not abstract statements of law. It requires that the jury believe that plaintiff moved into the path of defendant's automobile when in the exercise of ordinary care she could have seen its movement and avoided it, thus submitting the ultimate fact issue, which is whether plaintiff's act of entering the path of the oncoming force with constructive knowledge of its movement and ability on her part to avoid injury constituted negligence directly causing or contributing to cause her injury.

Plaintiff suggests that if this was an attempt to submit failure to keep a careful lookout Instruction No. 5 constitutes a *prejudicially erroneous deviation from* MAI 17.05. Defendant, however, was not attempting to submit the negative omission of failure to keep a lookout. Defendant was submitting the affirmative act of negligently moving into a situation fraught with danger after having looked and having seen the approaching automobile. It was plaintiff's erratic action in breaking away from her sister at the center line of the boulevard and running into defendant's path, *after having obtained notice of the oncoming automobile*, that defendant sought to have the jury brand as negligent.

Plaintiff suggests that the thrust of Paragraph First is negligent failure to have "avoided contact with the defendant's automobile"; that this is a general, ambiguous and all-inclusive phrase needing definition; that the language is not specific and should have hypothesized sufficient facts to inform the jury what her duty was and what acts or omissions on her part constituted breach of that duty; that plaintiff had *no duty to act or omit acting until* she knew or in the exercise of ordinary care could have known that there was reasonable likelihood of a collision. We see it differently. We consider the gist of the submission of negligence to be that of *moving into the path of the automobile* with knowledge of its movement and with ability to avoid a collision. While Instruction No. 5 does not specifically refer to leaving a place of safety and entering a dangerous position when it was unsafe to do so, any reasonable juror would so understand the instruction, in the light of the evidence. It was an undisputed, physical fact that plaintiff was safe as long as she stayed put on the center line. It was for the jury to determine whether plaintiff was unsafe as soon as she broke and ran into the traffic lane next to the center line. There was no need to encumber the instruction by hypothesizing evidentiary detail.

We are not persuaded by plaintiff's contention that the "could have avoided contact" language of the instruction constituted a roving commission to speculate on what conduct of plaintiff constituted negligence. There is no evidence that plaintiff would have been injured if she had remained stationary on the center line. It is an undisputed physical fact that if she had turned to the north or south and followed the center line she would have avoided contact with the automobile, as long as it continued to proceed in its continuing course, with its left side 2 feet east of the center line. Obviously if plaintiff turned around, faced west and proceeded in that direction she would have avoided contact with defendant's automobile. That she could have avoided contact with defendant's automobile by standing still is a self-evident, undisputed if not conceded fact which needed no elaboration in the instruction.

■ Plaintiff's second point is that the trial court erred in refusing plaintiff's offered Instruction A, as follows:

"The driver of a motor vehicle is charged with notice that the pedestrian might vary slightly from his course or that he might be taken unawares by the discovery of the motor vehicle in close proximity to him and involuntarily place himself in front of the vehicle, and, accordingly, in passing a pedestrian, must not drive so close that a slight deviation by the pedestrian would cause an accident, but must allow a sufficient margin of safety to allow for such deviations by the pedestrian."

Instruction A is simply an abstract statement of law requiring no finding by the jury. "Such instructions tend to mislead and confuse the jury and are properly refused." Chism v. Cowan, 425 S.W.2d 942 (Mo.1967). They are "as objectionable since the adoption of MAI as they were prior to that time. * * * Indeed, having the purposes of MAI in mind, it would seem that they are even more objec-

tionable now." State ex rel. Burgess v. Neaf, 439 S.W.2d 190, 194 (Mo.App.1969).

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.